510 A.2d 344

Louis A. MOONEY, d/b/a Bethel Steel Co., a Sole Proprietorship, (Louis A. Mooney and Norma Jean Mooney, his wife), Appellee,

v.

GREATER NEW CASTLE DEVELOPMENT CORPORATION, a Pennsylvania Non-Profit Corporation, Appellant.

Supreme Court of Pennsylvania.

Argued March 4, 1986.

Decided June 3, 1986.

Dominick Motto, Chambers, Nicolls, Balph, Paul & Motto, New Castle, for appellant.

Clifford B. Levine, Thorp, Reed & Armstrong, Pittsburgh, for amicus curiae Pa. Indus. Development Authority.

John R. Seltzer, New Castle, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-
MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Greater New Castle Development Corporation (GNCDC) appeals from an order of the Superior Court, 343 Pa.Super. 627, 494 A.2d 491, affirming an adjudication and final decree in equity of the Court of Common Pleas of Lawrence County. The final equity decree fashioned by the trial court declared that appellant GNCDC holds, as the trustee of a resulting trust for the benefit of the appellee Louis A. Mooney, certain real estate conveyed to it by the appellee. The lower court found the existence of a resulting trust and a trust relationship between GNCDC and appellee Mooney based upon a transaction between the parties pursuant to the Pennsylvania Industrial Development Authority Act, 1956, May 17, P.L. (1955) 1609 § 1 et seq., 73 P.S. § 301, et seq. The appellant was ordered to account to the appellee for all monies received as rent or otherwise from the premises that appellee conveyed to the appellant. In addition, it was ordered that at such time as all creditors are fully satisfied, appellant is to reconvey the property to the appellee. The court also ordered that in the event of a mortgage foreclosure, a complete accounting is to be provided to appellee, and all monies received by appellant in excess of appellee's obligation to appellant are to be paid over to appellee. Because we find that the lower court erred in holding that appellant GNCDC is the trustee of a resulting trust, we reverse.

The facts agreed to by the parties and submitted to the trial court upon stipulation established the following: The appellee conducted business as a sole proprietor in Lawrence County under the registered fictitious name of Bethel Steel Co. In 1970, appellee was seeking to obtain low interest loan funds for infusion into his business. He

sought the assistance of the appellant GNCDC. Appellant agreed to become involved in the project and arranged to secure financing under the provisions of the Pennsylvania Industrial Authority Act, *supra*. In October, 1970, the appellee along with his wife, Norma Jean Mooney, conveyed to the appellant, GNCDC, a certain tract of real estate situated in Shenango Township, Lawrence County, Pennsylvania upon which was located appellee's business. A general warranty deed reciting a consideration of $5,000.00 was delivered to appellant and recorded in the Recorder's Office of Lawrence County. The parties agreed that the purpose of the conveyance of the real estate to GNCDC "was to enable [appellee] Louis A. Mooney, doing business as Bethel Steel Co., to receive the benefits provided for under the Pennsylvania Industrial Authority Act, said conveyance being a part of the required procedure in order for financial assistance to be available under the said Act." (Stipulation of Facts No. 4). As part of the transaction, GNCDC made application to the Pennsylvania Industrial Development Authority (PIDA) for financing of appellee's project.[1] PIDA financing would enable appellee to obtain a favorable interest rate on loan monies he needed for the proposed project.

Shortly after the appellee conveyed the property to GNCDC, appellee and GNCDC executed a lease whereby appellant GNCDC leased the premises back to the appellee for a term of fifteen (15) years. The appellee agreed to pay a total rental of $231,283.30, payable at the rate of $1,284.91 a month, and to pay all annual taxes, insurance premiums and all other annual charges and assessments.

At the time of the conveyance and lease arrangement, appellant executed a first mortgage and mortgage note in favor of six financial institutions in the amount of $80,-000.00 at an interest rate of nine (9%) percent per annum.[2]

1. Under the provisions of the Industrial Development Authority Act, only an Industrial Development Agency, as defined by the Act, may apply for a loan in connection with an industrial development project. 73 P.S. § 306.

2. The mortgage document recorded in the Recorder's Office of Lawrence County identified the mortgagor as the appellant Greater New

Also, at the same time, appellant executed a second mortgage and mortgage note payable to PIDA in the amount of $64,000.00 at an interest rate of four (4%) percent per annum. Both mortgages were for fifteen (15) year terms and paralleled the fifteen (15) year term in the lease between appellant and appellee. The total of the monthly payments under the two mortgages corresponded to the monthly rental payment under the lease. Further, at the time of the conveyance, mortgage and lease, the parties anticipated that appellant would convey the premises back to the appellee after appellee completed full performance of all conditions under the terms of the lease.

In 1977, the appellee began to experience financial difficulties in his business and he defaulted on his lease. He made no rental payment after December 1, 1977, and he failed to pay the real estate taxes due on the premises for the year 1978. In February, 1979, appellant notified the appellee in writing that because of appellee's default in rental payments, and his failure to pay the taxes and keep the premises in repair, the lease between the parties was terminated. The appellant, using self-help, had taken possession of the property prior to February, 1979 and, after delivering the written notice of termination, re-let the premises to another tenant. Following the dispossession of appellee and the termination of his lease, appellee filed a complaint in equity against GNCDC seeking, inter alia, an order declaring that appellant held the subject property as trustee of a resulting trust for the benefit of appellee. The lower court granted appellee the relief he requested and the Superior Court affirmed. Upon the petition of GNCDC, we granted allocatur.

A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend

Castle Development Corporation and the mortgagee as First Federal Savings and Loan Association of New Castle, First National Bank of Lawrence County, Lawrence Savings and Trust Company, Peoples Bank of Western Pennsylvania, The Citizens National Bank of New Castle and Dollar Savings Association.

that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of.

*Policarpo v. Policarpo*, 410 Pa. 543, 189 A.2d 171 (1963); *Restatement Trusts, 2nd Edition* § 404. In this case, considering the circumstances existing at the time of the conveyance to appellant, the question presented is whether there is an inference that the parties intended that appellant have no beneficial interest in the subject property? We are not dealing with a question of an express trust, so it is not necessary for appellee to prove a manifest intent to create a trust. It is necessary though for appellee to produce evidence showing circumstances which raise an inference that in making the conveyance to the appellant, there was no intention to give appellant the beneficial interest in the property. "A resulting trust is imposed for the purpose of carrying out what it appears from the circumstances under which a disposition of the property is made would probably have been the intention of the person making the disposition if he had thought of the matter." *Restatement, Trusts 2nd Edition,* Chapter 12, Introductory Note. A resulting trust arises from the character of the transaction which permits an inference that the parties intended that the transferee not have the beneficial interest in the property conveyed rather than from a declaration of that intention.[3]

The appellant argues that the trial court erred, as a matter of law, in finding that the parties intended that appellee retain the right to the beneficial interest in the subject property. Appellant contends that no circumstance exists in this case which raises an inference that GNCDC should not have the beneficial interest in the property conveyed to it. We agree. The parties stipulated that the

**3.** A typical instance of this kind of transaction is "where a transfer of property is made to one person and the purchase price is paid by another person." *Restatement Trusts, 2nd Edition* § 440; *McHenry v. Stapleton,* 443 Pa. 186, 278 A.2d 892 (1971). Another is where property is gratuitously transferred with the intention of creating an express trust but the trust fails. *Restatement Trusts, 2nd Edition* § 411. Neither is the case here.

purpose of the conveyance from appellee to appellant was to enable appellee to obtain financing from PIDA. This procedure was required in order for financing assistance to be available under the Act. The Act provides that PIDA loans may only be made to industrial development agencies such as the appellant. 73 P.S. § 306. The Act further provides that any such loan made by PIDA "shall be secured by bond or note of the industrial development agency and by mortgages on the industrial development project for which such loan was made." 73 P.S. § 306(e). In order for the project in this case to be financed with a low interest PIDA loan, it was essential that appellant own the property upon which the project was to be developed. Ownership was necessary so that appellant could execute a mortgage to secure the loan obtained from PIDA. To accomplish this end, appellee conveyed *all* of his right, title and interest in the subject property to appellant. There were no limiting conditions, reservations, provisos or stipulations to the contrary contained in the deed. Having ownership of the property, appellant then was able to execute mortgages and obtain the desired financing. This was the plain intent of the parties when the conveyance was made to the appellant.

One who seeks to establish the existence of a resulting trust bears a heavy burden of proof; the evidence must be "clear, direct, precise, and convincing." *Policarpo v. Policarpo,* 410 Pa. 543, 189 A.2d 171 (1963); *see also Wosche v. Kraning,* 353 Pa. 481, 46 A.2d 220 (1946); *cf. Sayre Estate,* 443 Pa. 548, 279 A.2d 51 (1971); *Brose Estate,* 416 Pa. 386, 206 A.2d 301 (1965). This Court had held that "unless the evidence of the existence of an oral trust is of the highest probative value, equity should not act to convert an absolute ownership into an estate of lesser quantity." *Sechler v. Sechler,* 403 Pa. 1, 7, 169 A.2d 78, 81 (1961). The facts and circumstances from which a court may find a resulting trust should be of no lesser probative value.

*Masgai v. Masgai,* 460 Pa. 453, 333 A.2d 861 (1975). The evidence here falls short of meeting the required burden of proof to establish a resulting trust. The circumstances simply are insufficient to raise an inference that the appellant was not to have the beneficial interest in the subject premises.

The appellee argues unconvincingly that the facts arising in this case establish the creation of a resulting trust. In support of his argument, appellee points to: (1) the agreed purpose of the conveyance to appellant, namely, to enable appellee to obtain financing with PIDA, and (2) the fact that the parties anticipated a reconveyance of the property to appellee after full compliance with all of the terms of the lease. Neither of these circumstances suggest that the parties intended that appellant have no beneficial interest.

In order for appellee to obtain the desired benefits of low interest business financing through a PIDA loan, the subject property had to be owned by the appellant. This fact alone does not raise the inference necessary for a resulting trust to emerge. Considering the conveyance to appellant and the lease that was executed, the parties intended that appellant be vested with absolute title. There is nothing in the Act or in the agreement between the parties that suggests otherwise. The Act does not provide for a reconveyance of the real estate by an industrial development agency to the transferor who benefits from the loan between the agency and the authority. Such a reconveyance could be provided for by appropriate provisions in the agreement between the agency and the transferor. In this case, the evidence fails to establish the parties agreed to such provisions. But, even if such agreement was found to exist in the instant case, this would not automatically confirm circumstances creating a resulting trust. It would merely establish a contractual right on the part of the appellee to have the property reconveyed to him upon his compliance with the terms of the agreement, which, in this case, is the lease. The parties stipulated, and the lower court by adopting the stipulation found, that the parties

anticipated that the property would be reconveyed to appellee *if* he met and performed all the conditions and terms of the lease. Quite clearly, this proviso was not met. The appellee failed to discharge his duties and obligations under the lease and, therefore, even if he had a contractual right to a reconveyance conditioned upon fulfilling the provisions of the lease, that right was lost. Under the circumstances there are no facts to suggest that the appellee is entitled to a reconveyance of the property notwithstanding his failure to meet and perform the conditions of the lease agreement. The appellee cannot have it both ways.

The order of the Superior Court is reversed.[4]

---

**4.** The appellee raises an additional argument that his due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution were violated by the manner in which appellant took possession of the subject premises. The Superior Court refused to decide this question because it was not set forth in the statement of questions involved as required by Pa.R.A.P. 2116; and therefore, it was not properly before that court. For this reason we will not consider the question.